Richard ROMEO and Darlene Romeo,
Plaintiffs/Appellants,

v.

Robert E. JONES, et al.,
Defendants/Respondents.

No. ED 79417.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 5, 2002.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 17, 2002.

Case Transferred to Supreme Court
May 28, 2002.

Case Retransferred to Court of
Appeals Oct. 22, 2002.

Original Opinion Reinstated
Nov. 4, 2002.

Richard C. Witzel, David Anthony Dimmitt, Paul K. Travous, Law Office of Witzel, Kenney & Dimmitt, St. Louis, MO, for Appellants.

Thomas Hayek, Darren Edward Daley, Law Office of Behr, McCarter & Potter, P.C., Clayton, MO, for Respondents.

SHERRI B. SULLIVAN, Presiding Judge.

### Introduction

Richard Romeo (Mr. Romeo) and Darlene Romeo (Mrs. Romeo) (collectively Appellants) appeal from the trial court's judgment granting summary judgment in favor of attorneys Robert E. Jones, Alan Farkas, Robert C. Jones, David M. Korum, and David G. Waltrip (collectively Respondents) and against Appellants on their Petition alleging abuse of process by Respondents based upon Respondents' representation of a third party in litigation against Appellants. We reverse and remand for further proceedings.

### Factual and Procedural Background

In September 1990, Appellants purchased a newly constructed house in Carriage Crossing Place subdivision from Dell Jones and Associates, Inc. (Dell Jones). At the time Appellants purchased the house, Donald R. Jones was the sole officer of Dell Jones. The board of directors consisted of Donald R. Jones, Ronald J. DeRouin (DeRouin), and Jack Elmo. DeRouin conducted business and financial activities for Dell Jones. In 1994, DeRouin was the sole officer and director of Dell Jones.

Appellants were dissatisfied with the construction of their house. Various efforts were made to correct some of the alleged defects, yet Appellants were displeased

with the results. After talking with other representatives of Dell Jones, in August 1991, Mrs. Romeo met with DeRouin to address certain repairs that Mrs. Romeo had requested in a letter sent to Dell Jones in April. Subsequent to this meeting, various efforts again were made to correct some of the alleged defects, yet again Appellants were displeased with the results.

In February 1994, Mrs. Romeo began distributing packets of information at Rockwood Forest subdivision, being developed by R.J. DeRouin Homes, Inc. (DeRouin Homes). DeRouin was the sole officer and director of DeRouin Homes. Mrs. Romeo also distributed packets at Crystal Creek subdivision, being developed by D.R. Jones & Associates, Inc. (D.R.Jones). The packets included a list of "substandard features" of Appellants' house, proposals for repairs to the house, and correspondence between Appellants and DeRouin, the Better Business Bureau, and the Attorney General. Mr. Romeo was aware of and agreed with his wife's activities.

In April 1994, Robert E. Jones, DeRouin's attorney, sent a letter to Appellants indicating that they "have been picketing another subdivision which is being developed by Mr. DeRouin and another corporation, unrelated to Dell Jones & Associates, Inc." In August 1994, Mrs. Romeo distributed packets at Carriage Crossing Phase II, being developed by DeRouin Homes.

On August 23, 1994, DeRouin Homes, through its attorneys Robert E. Jones and Alan Farkas (Farkas) of the law firm Jones, Korum, & Jones, filed a Petition for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction (DeRouin Homes Lawsuit I) against Appellants. The petition requested that Appellants be ordered "to refrain from making any public statements concerning [DeRouin Homes'] professional aptitude and/or any public statements which tend to suggest that [DeRouin Homes] is in any way responsible for any alleged defects in [Appellants'] residence and that [Appellants] be ordered to refrain from coming within one hundred feet of any real property owned by or developed by [DeRouin Homes]." The trial court granted the temporary restraining order.

On September 7, 1994, Appellants filed a Motion to Dismiss the DeRouin Homes Lawsuit I arguing, among other things, that the allegations and the temporary restraining order violated Appellants' First Amendment rights. The trial court granted the motion and gave DeRouin Homes thirty days in which to file an amended petition.

On October 7, 1994, DeRouin Homes filed an Amended Petition for Damages alleging slander and libel (DeRouin Homes Lawsuit II) against Appellants. For about a year, the parties engaged in written discovery and depositions. During this time, houses in the Rockwood Forest and Carriage Crossing Phase II subdivisions continued to be sold. In November 1995, DeRouin Homes voluntarily dismissed the lawsuit without prejudice.

In September 1996, Appellants filed a Petition alleging abuse of process and malicious prosecution (Romeo Lawsuit I) against DeRouin and DeRouin Homes based upon the DeRouin Homes Lawsuit. In July 1998, Appellants settled the Romeo Lawsuit I and executed a Release against DeRouin, DeRouin Homes, Donald R. Jones, Jack Elmo, Dell Jones, Dell Properties, Inc., D.R. Jones, and Gateway Properties, Inc.[1] Subsequently, the trial court

1. We note that the Release provided the following:

dismissed the Romeo Lawsuit I without prejudice for failure to prosecute. Also in July 1998, Appellants filed a Satisfaction of Judgment for a Petition for breach of warranty and breach of implied warranty of fitness filed against Dell Jones.

In August 1999, Appellants filed a Petition alleging abuse of process (Romeo Lawsuit II) against Respondents based upon the DeRouin Homes Lawsuit. Respondents filed an Answer denying the allegations and raising several affirmative defenses, including res judicata and collateral estoppel and settlement and release. In January 2001, Respondents filed an Amended Motion for Summary Judgment arguing that (1) Appellants were barred from bringing the action because they split their claim in that they litigated the exact same claim against Respondents' clients; and (2) Appellants could not provide sufficient and competent evidence to support each required element of a claim for abuse of process. The trial court granted Respondents' motion without specifying its reasoning. Appellants appeal from this judgment.

### Standard of Review

This Court reviews summary judgment essentially *de novo* because the propriety of summary judgment is purely an issue of law. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The record is reviewed in the light most favorable to the party against whom judgment was entered, and that party is given the benefit of all reasonable inferences from the record. *Id.* Evidence presented in support of

the motion is taken as true unless contradicted by the non-moving party's response to the motion. *Id.* The moving party bears the burden of proving that it is entitled to judgment as a matter of law and that no genuine issues of material fact exists. *Id.* at 382. A genuine issue exists where the record contains competent materials which evidence two plausible, but contradictory, accounts of essential facts. *Id.* A genuine issue is not an argumentative, imaginary, or frivolous dispute. *Id.*

Where the moving party is the defending party, it may establish a right to summary judgment by showing facts that negate any one of the plaintiff's prima facie case elements. *Id.* at 381. Upon meeting this burden, the non-moving party must show that one or more of the material facts shown by the moving party to be undisputed is, in fact, genuinely disputed. *Id.*

Where the trial court does not specify its reasoning for granting a motion for summary judgment, we presume it acted according to grounds set forth in the motion. *Kanton v. Luettecke Travel Service, Inc.*, 901 S.W.2d 241, 244 (Mo.App. E.D. 1995). However, we are entitled to affirm on any ground sufficient to sustain the judgment and are not limited to the grounds relied on by the trial court. *Felling v. Giles*, 47 S.W.3d 390, 393 (Mo.App. E.D.2001). We will affirm the trial court's judgment if it is deemed correct under any reasonable theory supported by all of the evidence. *Id.*

### Discussion

■ Appellants raise three points on appeal. We begin with a procedural issue

This release shall not release any attorney who participated in, or assisted in the preparation, filing or prosecution of, the cause styled *R.J. DeRouin Homes, Inc. v. Darlene Romeo and Richard Romeo*, nor shall this release apply to release any law firm or entity with which such attorneys engaged in

the practice of law. Without limitation, included in persons and entities NOT RELEASED are: Robert E. Jones; the law firm of Jones, Korum & Jones; Alan L. Farkas; the law firm of Jones, Korum, Waltrip & Jones; and any persons being partners in such law firms.

raised by Respondents and addressed in Appellants' point two on appeal. Respondents argue that Appellants' claim is barred by res judicata in light of the Romeo Lawsuit I and because Appellants split their cause of action. We disagree. Preliminarily, Appellants maintain that Respondents waived the defense of splitting a cause of action because they did not raise it in their Answer. Respondents raised the affirmative defense of res judicata in their Answer. The rule against splitting a cause of action is a form of res judicata. *Foster v. Foster,* 39 S.W.3d 523, 528 (Mo.App. E.D.2001). Thus, we conclude that Respondents did not waive the defense of splitting a cause of action, but we address it in an analysis of res judicata.

█ The doctrine of res judicata requires the concurrence of the following elements: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons or parties to the action; and (4) identity of the quality or status of the person for or against whom the claim is made. *Felling v. Giles,* 47 S.W.3d 390, 394 (Mo.App. E.D.2001). We find that Respondents cannot satisfy element three. Res judicata bars only claims by parties and privies. *Floyd v. Shaw,* 830 S.W.2d 564, 565 (Mo.App. E.D.1992). The concept of privity for purposes of res judicata connotes interests so closely related that the party sought to be barred may be said to have had a day in court. *Id.*

█ Traditionally, an attorney's liability for the attorney's professional acts has been governed by the concept of privity, and an attorney is usually not liable for an injury to a nonclient arising out of the representation of a client. *Macke Laundry Service Ltd. Partnership v. Jetz Service Co., Inc.,* 931 S.W.2d 166, 176–177 (Mo.App. W.D.1996). However, a non-client may bring a cause of action against an attorney for abuse of process. *Id.* at 177; *see also Stafford v. Muster,* 582 S.W.2d 670, 687 n. 5 (Mo. banc 1979). Thus, we conclude that Appellants did not "have their day in court" against Respondents for abuse of process, especially in light of the Release that expressly excludes Respondents from release. In so concluding, we do not say that, in the interests of judicial economy, the current controversy between Appellants and Respondents could not have been raised at the Romeo Lawsuit I; however, we find no express requirement to do so.

█ Res judicata also requires an adjudication on the merits. *Vilsick v. Standard Insulations, Inc.,* 926 S.W.2d 499, 501 (Mo.App. E.D.1996). The trial court dismissed the prior cause of action without prejudice for failure to prosecute, thereby permitting Appellants to bring another action. *See* Rule 67.01.[2] Although Appellants executed a Release, the Release provided that if payments were untimely, the Release would be null and void. Thus, the potential for the filing of another action for an adjudication on the merits existed. Accordingly, under these facts and circumstances, we determine that res judicata does not apply to bar Appellants' claim.

Turning to the substantive issue, in their first point on appeal, Appellants argue that the trial court erred in granting summary judgment because genuine issues of material fact exist as to Respondents' collateral purposes for filing and prosecuting the DeRouin Homes Lawsuit. Appellants maintain that there are facts to support a finding that Respondents wrongfully utilized the DeRouin Homes Lawsuit (1) to prohibit Appellants from making truthful statements concerning their house and DeRouin's professional aptitude and build-

**2.** All rule references are to Mo. R. Civ. P.2001, unless otherwise indicated.

ing standards so as to allow DeRouin to sell homes he was building through his company DeRouin Homes; and (2) to conduct discovery to obtain information to be used for defending Dell Jones in the event Appellants filed a lawsuit against it.

 A pleading alleging abuse of process must set forth ultimate facts establishing the following elements: (1) the present defendant made an illegal, improper, perverted use of process, a use neither warranted or authorized by the process; (2) the defendant had an illegal purpose in exercising such illegal, improper, perverted use of process; and (3) damage resulted. *Muegler v. Berndsen*, 964 S.W.2d 459, 462 (Mo.App. E.D.1998). No liability is incurred where the defendant has done nothing more than pursue the lawsuit to its authorized conclusion regardless of how evil the defendant's motive might be. *Id.*

 The test requires determining whether the process has been used to accomplish some unlawful or collateral end to which the other party could not be legally compelled. *Community Title Co. of St. Louis v. Lieberman Management Co.*, 817 S.W.2d 255, 258 (Mo.App. E.D. 1991). Abuse of process refers to some willful, definite act not authorized by the process or aimed at an objective not legitimate in the proper employment of such process. *Id.* The defendant must have some ulterior purpose and act willfully in the improper use of the process. *Id.* The ulterior purpose may be inferred from the wrongful use made of the process, but the use itself may not be inferred from the motive. *Id.*

We emphasize that we are to review the record in the light most favorable to Appellants, and we are to give them the benefit of all reasonable inferences from the record. Accordingly, we find that genuine issues of material fact exist as to whether Respondents made an illegal, im-

proper, perverted use of process. The following are examples of the evidence that create a genuine issue as to the legitimacy of purpose behind the DeRouin Homes Lawsuit:

(1) In his deposition, Mr. Romeo testified that in a telephone conversation on August 23, 1994, Farkas told him that the DeRouin Homes Lawsuit I "was to shut [Appellants] up."

(2) In a letter to DeRouin dated February 23, 1995, Farkas stated that the "bulk of the discovery [for the DeRouin Homes Lawsuit II] is directed at establishing a defense for [DeRouin] should [Appellants] follow-up on their threats to file suit based on the alleged construction defects."

(3) In a letter to DeRouin dated September 20, 1995, Farkas stated that the DeRouin Homes Lawsuit II "has been successful in quieting [Appellants]."

(4) In a letter to DeRouin dated October 19, 1995, Farkas stated that he had been able "to orchestrate a continuance" of two depositions of DeRouin's sales agents so that DeRouin "will be through with [his] efforts to develop and sell so that there will be little to risk in dismissing the case."

 A jury could infer from this evidence that the purpose of the DeRouin Homes Lawsuit was to quiet Appellants from making any statements regarding DeRouin Homes, and this alleged purpose is an illegal, improper, perverted use of process. Accordingly, Respondents have not established a right to summary judgment. Appellants' point one on appeal is granted. In light of this analysis, we need not address Appellants' point three on appeal.

*Conclusion*

Because Appellants' claim is not procedurally barred and because genuine issues of material fact exist, Respondents are not entitled to judgment as a matter of law. Accordingly, the trial court erred in granting summary judgment in favor of Respondents. The judgment of the trial court is reversed and remanded for further proceedings.

LAWRENCE G. CRAHAN and LAWRENCE E. MOONEY, JJ., concur.