Richard ROBINSON, et al., Appellant,

v.

Cheryl HOOKER, Respondent.

No. WD 71207.

Missouri Court of Appeals, Western District.

Aug. 3, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 28, 2010.

Application for Transfer Denied Nov. 16, 2010.

Patrick B. Starke, Esq., Blue Springs, for appellant.

Jamie L. Cook, Esq., Kansas City, for respondent.

Before Division One: LISA WHITE HARDWICK, Chief Judge Presiding, JAMES M. SMART, JR., and MARK D. PFEIFFER, Judges.

LISA WHITE HARDWICK, Chief Judge.

Richard Robinson appeals the dismissal of his negligence claim against his co-employee, Cheryl Hooker, following a workplace accident. Robinson contends the circuit court erred in determining his negligence claim was barred by the exclusivity provisions of the Workers' Compensation Act and the doctrines of *res judicata* and official immunity. For reasons explained herein, we reverse the dismissal and remand the cause to the circuit court.

## I. FACTUAL AND PROCEDURAL HISTORY

On October 23, 2007, Robinson and Hooker were performing street cleaning tasks as employees of the City of Kansas City, Missouri. Hooker lost her grip on a high pressure hose that swung wildly and struck Robinson, causing blindness in his right eye. Robinson filed a workers' compensation claim for permanent partial disability benefits, which he settled with the City on January 30, 2009.

Two months later, Robinson filed a Petition against Hooker in the Jackson County Circuit Court. The petition alleged that Robinson suffered an eye injury as a result of Hooker's negligence in failing to use ordinary care while operating a high pressure hose. The petition also included a loss of consortium claim for Robinson's wife, Nadine. Hooker filed a Motion to Dismiss, asserting the court lacked subject matter jurisdiction because the Workers'

Compensation Act provided Robinson's exclusive remedy for his injury claim against a co-employee. Alternatively, the motion asserted that Robinson's negligence claim was barred by the doctrines of *res judicata* and official immunity.

The circuit court granted Hooker's motion without explanation. Robinson appeals the dismissal of his petition.

## II. STANDARD OF REVIEW

A motion to dismiss is an attack on the petition and solely a test of the adequacy of the pleadings. *Wheeler v. Sweezer*, 65 S.W.3d 565, 568 (Mo.App. 2002). On appeal of a judgment granting dismissal, this court must determine if the facts pleaded and the reasonable inferences therefrom state any grounds for relief. *Id.* We must assume the factual allegations are true and make no attempt to weigh credibility or persuasiveness. *Johnson ex rel. Wilken v. Jones*, 67 S.W.3d 702, 705 (Mo.App.2002). "Our review is a *de novo* examination of whether the petition invokes principles of substantive law." *Clark v. Clark (In re Estate of Clark)*, 83 S.W.3d 699, 702 (Mo.App.2002).

When the circuit court does not provide reasons for dismissing a petition, we must presume the decision was based on the grounds stated in the motion to dismiss. *Duvall v. Lawrence*, 86 S.W.3d 74, 78 (Mo.App.2002). We will affirm if dismissal was appropriate on any of the grounds asserted by the movant. *Id.* In this case, Hooker moved for dismissal based on the exclusivity of the Workers' Compensation Act, *res judicata*, and official immunity. Because the circuit court did not explain the grounds for its decision, we must consider whether the dismissal was appropriate under any of the grounds asserted. *Rychnovsky v. Cole*, 119 S.W.3d 204, 208 (Mo.App.2003).

### III. Issues on Appeal

### A. Workers' Compensation Act

In her Motion to Dismiss, Hooker argued the circuit court lacked subject matter jurisdiction because the Workers' Compensation Act, Section 287.120,[1] provides the exclusive remedy for Robinson's injury claim against a co-employee. Robinson contends the court erred in dismissing his petition on this ground because the Act does not bar civil claims against co-employees, based on a 2005 amendment requiring strict construction of the exclusivity provision. § 287.800.

 As a preliminary matter, we find that Hooker's defense of immunity under the Workers' Compensation Act did not raise a jurisdictional defect. In *McCracken v. Wal–Mart Stores E., LP,* 298 S.W.3d 473, 479 (Mo. banc 2009), the Supreme Court recently recognized that the circuit court has subject matter jurisdiction over personal injury claims pursuant to article V, section 14 of the Missouri Constitution, and the statutory provisions of the Workers Compensation Act cannot overrule that constitutional authority.[2] Thus, any claim of immunity under the Act "is not a question that affects the circuit court's subject matter jurisdiction" and should not be raised in a motion to dismiss. *Id.* The proper procedure for raising the Act's applicability is as an affirmative defense, as provided in Rules 55.08 and 55.27(a).[3] *Id.*

Because *McCracken* was decided while this case was pending, we must consider Hooker's claim of immunity as preserved by the filing of her motion to dismiss. *Id.*

at 480. For purposes of this appeal, we will proceed as if Hooker had filed a responsive pleading asserting the affirmative defense of employer immunity under Section 287.120. This procedural posture allows us to address the issue presented: Whether Hooker, as Robinson's co-employee, can properly seek immunity from the civil suit based on a strict construction of the Act's exclusivity provisions.

### 1. History of Co–Employee Immunity

Historically, prior to the passage of workers' compensation laws, an employer was not liable for injuries to an employee caused by the negligent acts of a "fellow servant." *Bender v. Kroger Grocery & Baking Co.,* 310 Mo. 488, 276 S.W. 405, 406 (1925). Missouri courts gradually increased the employer's tort liability for these injuries based on the theory that an employer has a non-delegable duty to provide a safe place to work. *Id.* If a co-employee was negligent in performing the non-delegable duty of an employer, the employer could be held responsible for the resulting injuries to other employees. *Mitchell v. Polar Wave Ice & Fuel Co.,* 206 Mo.App. 271, 227 S.W. 266, 269 (1921).

In 1926, the Workmen's Compensation Act made the employer responsible for providing benefits to injured employees in exchange for the employer receiving immunity against tort claims for the injuries. *Gunnett v. Girardier Bldg. & Realty Co.,* 70 S.W.3d 632, 635 n. 2, 635–36 (Mo.App. 2002). Following the common law approach, courts later extended the statutory

---

**1.** All statutory citations are to the Revised Missouri Statutes 2000, as updated by the Cumulative Supplement 2009, unless otherwise indicated.

**2.** *McCracken* applied the holding of *Webb ex rel. J.C.W. v. Wyciskalla,* 275 S.W.3d 249, 251–54 (Mo. banc 2009), wherein the Supreme Court clarified that Missouri recog-

nizes only two types of jurisdiction: personal and subject matter, both of which derive from constitutional principles.

**3.** All rule citations are to Missouri Rules of Civil Procedure (2010) unless otherwise noted.

immunity to co-employees for negligence in performing a non-delegable duty of the employer. *State ex rel. Badami v. Gaertner*, 630 S.W.2d 175, 179 (Mo.App.1982).

In *Badami*, this judicial extension of immunity was deemed necessary to "fix" the Act's omission of agency principles in determining liability for workplace injuries. *Id.* at 178. Under *Badami* and its progeny, a co-employee could not be sued unless there was a showing of "something more" than a breach of the employer's duty to provide a safe workplace. *Id.* at 180; *State ex rel. Taylor v. Wallace*, 73 S.W.3d 620, 622 (Mo. banc 2002) (*overruled on other grounds by McCracken*, 298 S.W.3d at 478–79). The "something more" test required proof that a co-employee engaged in an affirmative negligent act that purposefully and dangerously caused or increased the risk of injury. *Taylor*, 73 S.W.3d at 622.

### 2. Statutory Construction

Prior to 2005, Section 287.800 mandated that "[a]ll provisions of [the Workers' Compensation Act] shall be liberally construed with a view to the public welfare." Under this standard, courts broadly interpreted the Act to extend benefits to the largest possible class and resolved any doubts as to the right of compensation in favor of the employee. *Schuster v. State Div. of Emp't Sec.*, 972 S.W.2d 377, 384 (Mo.App.1998).

 In 2005, the Act was amended to eliminate the requirement of liberal construction. Section 287.800 now provides:

Administrative law judges, associate administrative law judges, legal advisors, the labor and industrial relations commission, the division of workers' compensation, and *any reviewing courts shall construe the provisions of this chapter strictly.*

(Emphasis added.) This change requires the courts to use principles of strict construction in applying all provisions of the workers' compensation statute.

 Strict construction means that a "statute can be given no broader application than is warranted by its plain and unambiguous terms." *Harness v. S. Copyroll, Inc.*, 291 S.W.3d 299, 303 (Mo.App. 2009). The operation of the statute must be confined to "matters affirmatively pointed out by its terms, and to cases which fall fairly within its letter." *Allcorn v. Tap Enters., Inc.*, 277 S.W.3d 823, 828 (Mo.App.2009) (*citing* 3 SUTHERLAND STATUTORY CONSTRUCTION § 58:2 (6th ed.2008)). " 'A strict construction of a statute presumes nothing that is not expressed.' " *Id.* (quoting *Sutherland, supra.*)

### 3. Strict Construction of Employer Immunity Provisions

Based on the new requirement of strict construction, Robinson argues that the exclusivity provisions of the Workers' Compensation Act, which grants employer immunity from civil claims, cannot be applied to co-employees. Section 287.120 of the Act provides:

1. Every employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of the employee's employment, and shall be released from all other liability therefore whatsoever, whether to the employee or any other person.

2. The rights and remedies herein granted to an employee shall exclude all other rights and remedies of the employee ... at common law or otherwise, on account of accidental injury or death, except such

rights and remedies as are not provided for by this chapter.

The first paragraph of this section only refers to an "employer" being released from liability in exchange for providing workers' compensation benefits. Because there is no provision releasing *employees* from liability to their injured co-workers, Robinson contends the immunity is exclusively available to employers. Strict construction requires this court to interpret and apply the Act based on its plain language. Robinson asserts there is nothing in the Act to indicate that the term "employer" includes co-employees; thus, the more liberal application and extension of the employer immunity to co-employees, as set forth in *Badami* and its pre–2005 progeny, is no longer applicable.

Robinson finds further support for his argument in the second paragraph of Section 287.120, which states that the exclusivity provision only limits the rights and remedies of the employee as specified in the Act. This language implicitly allows an injured employee to pursue civil remedies for claims against parties not covered by the Act. That interpretation is consistent with Section 287.150.1, which expressly preserves the employee's right of recovery against a "third person" whose negligence caused the . workplace injury. Robinson posits that a co-employee qualifies as a third party who can be sued for tort liability. *See Schumacher v. Leslie*, 360 Mo. 1238, 232 S.W.2d 913, 917 (1950).

█ We agree that the exclusivity provisions of Section 287.120 must be strictly construed in light of the 2005 amendment to the Act. *See McCracken*, 298 S.W.3d at 481. We also agree that co-employee immunity primarily arose from a judicial construct in *Badami* that must be re-evaluated based on principles of strict construction. In so doing, we are mindful that the primary rule of statutory interpretation is to effectuate legislative intent as reflected in the plain and ordinary language of the statute. *Berra v. Danter*, 299 S.W.3d 690, 696 (Mo.App.2009).

With regard to Section 287.120, the determination of whether the exclusivity provision applies to co-employees depends upon the meaning of the term "employer." When a term is defined within a statute, we must give effect to the legislature's definition. *Jones v. Dir. of Revenue*, 832 S.W.2d 516, 517 (Mo. banc 1992). The Act defines "employer," in relevant part, as:

(1) Every *person*, partnership, association, corporation, limited liability partnership or company, trustee, receiver, the legal representatives of a deceased employer, and every other person, including any person or corporation operating a railroad and any public service corporation, *using the service of another for pay;*

. . . .

(3) Any of the above-defined employers must have five or more employees to be deemed an employer for the purposes of this chapter. . . .

§ 287.030.1 (emphasis added). The meaning of a key term in the Act is subject to strict construction. *Hager v. Syberg's Westport*, 304 S.W.3d 771, 776 (Mo.App. 2010).

█ Generally, a co-employee would not fall within this statutory definition of an "employer" as a "person ... using the service of another for pay" and "hav[ing] five or more employees." Strict application of the definition requires us to further conclude that co-employees are not entitled to invoke the employer immunity under Section 287.120. Even though the language of the exclusivity provision was not amended in 2005, the scope of employer immunity was narrowed by the new lens of strict construction. *See Mo. Alliance*

*for Retired Americans v. Dep't of Labor & Indus. Relations,* 277 S.W.3d 670, 679–80 (Mo. banc 2009) (2005 amendments limiting the definitions of "injuries" and "accidents" necessarily limited the scope of the exclusivity clause). The immunity applies only to those who qualify as an "employer" under the Act. The employee retains a common law right of action against co-employees who do not fall squarely within the definition of "employer."[4]

■■■ Hooker cannot qualify as an "employer" based on the mere statement in the petition that she is a co-employee of Robinson. Accordingly, she is not entitled to immunity under Section 287.120, and the circuit court erred in dismissing Robinson's petition on that ground. Unless there is an alternative ground for the dismissal (as discussed herein in the remaining points), we must reverse the judgment and remand the cause for further proceedings.

## B. Doctrine of *Res Judicata*

■■■ Hooker's Motion to Dismiss asserted Robinson's tort action was barred by the doctrine of *res judicata* based on the settlement of his workers' compensation claim against the City. Robinson contends the circuit court erred in dismissing his petition on this ground because there was a lack of identity between the claims and parties in the two proceedings.

■■■ The defense of *res judicata* bars any claim that was previously litigated between the same parties or those in privity with them. *Spath v. Norris,* 281 S.W.3d 346, 350 (Mo.App.2009). Claims that could have been raised by a prevailing party in the first action are merged into, and thereby barred by, the first judgment.

*Chesterfield Vill. v. City of Chesterfield,* 64 S.W.3d 315, 318 (Mo. banc 2002). The defense is applicable upon "the concurrence of the following [four] elements: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons or parties to the action; and (4) identity of the quality or status of the persons for or against whom the claim is made." *Romeo v. Jones,* 86 S.W.3d 428, 432 (Mo.App.2002). The inquiry focuses on the factual bases for the claim and not the legal theories asserted. *Chesterfield,* 64 S.W.3d at 319.

In the workers' compensation proceeding, Robinson sought permanent partial disability benefits from the City to cover his loss of income and medical expenses from his work-related injury. Here, Robinson has sued Hooker for her personal negligence in operating a water hose. He seeks compensation for pain and suffering, loss of consortium, and other tort-related damages that are not available under the Workers' Compensation Act. Different facts will be necessary to prove the damage claims in the lawsuit as compared to those in the disability proceeding. The parties in the two actions are also necessarily different. Robinson could only obtain workers' compensation benefits from his employer; he could not have brought suit against Hooker personally in the earlier proceeding. Thus, Robinson's claim against Hooker was not merged into or barred by the earlier judgment awarding workers' compensation benefits. There is a clear lack of identity between the two proceedings.

Hooker's motion cited two cases to support her request for dismissal on grounds of *res judicata: Conley v. Treasurer of*

4. This conclusion is consistent with the longstanding principle that close questions regarding the existence of common law rights should weigh in favor of retaining the common law right of action. *See Distefano v. Saint–Gobain Calmar, Inc.,* 272 S.W.3d 207, 211–12 (Mo.App.2008); *Looper v. Carroll,* 202 S.W.3d 59, 64 n. 6 (Mo.App.2006).

*Missouri,* 999 S.W.2d 269 (Mo.App.1999) *overruled on other grounds by Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 226 (Mo.banc 2003), and *Shockley v. Laclede Electric. Cooperative,* 825 S.W.2d 44 (Mo.App.1992). These cases are distinguishable because they involved workers' compensation claims that were filed subsequent to an original benefit claim and not a subsequent lawsuit. In *Conley,* the court did not rule that the employee's claim was barred by *res judicata;* rather, it held the employee could not re-litigate a stipulated disability percentage in a subsequent claim against the Second Injury Fund. 999 S.W.2d at 274–75. Likewise, in *Shockley,* the court ruled that once a workers' compensation claim was settled by stipulation, the employee could not later file a second benefits claim seeking additional treatment for the original injury. 825 S.W.2d at 49. Neither case provides legal justification for dismissal of a lawsuit against an individual following the resolution of a workers' compensation claim.

Robinson's petition was not barred by the settlement of his benefits claim. He could not have sued Robinson for personal liability in the workers' compensation proceeding. The circuit court erred in dismissing his lawsuit on grounds of *res judicata.* We must, therefore, reverse the judgment unless the dismissal was appropriate on the remaining alternative ground of official immunity.

**C. Official Immunity**

█ In his final point on appeal, Robinson contends the circuit court erred in dismissing his petition based on Hooker's defense of official immunity. He argues the immunity is inapplicable because Hooker is not a public official and she was not performing discretionary acts.

█ "Official immunity protects public officials from liability for alleged acts of ordinary negligence committed during the course of their official duties for performance of discretionary acts." *Davis v. Lambert–St. Louis Int'l Airport,* 193 S.W.3d 760, 763 (Mo.banc 2006). It is "intended to provide protection for individual government actors who, despite limited resources and imperfect information, must exercise judgment in the performance of their duties. Its goal is also to permit public employees to make judgments affecting public safety and welfare without concerns about possible personal liability." *Southers v. City of Farmington,* 263 S.W.3d 603, 611 (Mo.banc 2008) (internal citations omitted).

█ As a threshold requirement for official immunity, Hooker must demonstrate that she is a public official. *Lynn v. T.I.M.E.–D.C., Inc.,* 710 S.W.2d 359, 361 (Mo.App.1986). She is not entitled to such immunity merely as a City employee working alongside Robinson. *Id.* To invoke the defense, Hooker must plead and prove that she was employed in a supervisory capacity that elevated her to the level of a public official. *Id.; see also Schulz ex rel. Schulz v. City of Brentwood,* 725 S.W.2d 157, 161 (Mo.App.1987).

█ Beyond her official status, Hooker must also establish that she was performing a discretionary act and not a ministerial act. The difference depends on the "degree of reason and judgment" required to perform the act. *Kanagawa v. State By and Through Freeman,* 685 S.W.2d 831, 836 (Mo.banc 1985) *overruled on other grounds by Alexander v. State,* 756 S.W.2d 539 (Mo.banc 1988). "An act is discretionary when it requires 'the exercise of reason in the adaption of means to an end, and discretion in determining how or whether an act should be done or a course pursued.'" *Davis,* 193 S.W.3d at 763 (*quoting Jackson v. Wilson,* 581 S.W.2d 39, 43 (Mo.App.1979)). A ministe-

rial act is a clerical function that "a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." *Jackson*, 581 S.W.2d at 43.

The underlying petition alleged that Robinson suffered an eye injury when his "co-employee," Hooker, negligently operated a high pressure hose. No further factual details were provided in the pleadings or in the Motion to Dismiss. We find nothing in the record to indicate whether Hooker was a supervisor or whether she was performing a discretionary act at the time the injury occurred. Accordingly, Hooker failed to establish that she was entitled to official immunity.

The circuit court erred in dismissing Robinson's petition on the basis of official immunity. The judgment of dismissal is reversed, and the cause is remanded for further proceedings. On remand, Hooker will have the opportunity to file a responsive pleading, and the circuit court can thereupon consider whether she has a viable affirmative defense of official immunity.

## CONCLUSION

The judgment of dismissal is reversed and remanded consistent with the instructions set forth herein.

All Concur.